IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Linda D. Daniels,                :

    Plaintiff,              :

  v.                             :        Case No. 2:07-cv-0666

Michael J. Astrue,               :        JUDGE WATSON
Commissioner of Social Security,          MAGISTRATE JUDGE KEMP
                                 :
    Defendant.

<u>REPORT AND RECOMMENDATION</u>

I.

Plaintiff, Linda D. Daniels, filed this action seeking review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for disability benefits. That application, which was filed on November 13, 2003, alleged that plaintiff became disabled on August 1, 2003, as a result of multiple medical impairments.

After initial administrative denials of her claim, plaintiff was afforded a hearing before an Administrative Law Judge on January 10, 2006. In a decision dated October 26, 2006, the Administrative Law Judge denied benefits. That decision became the final decision of the Commissioner when the Appeals Council denied review on May 25, 2007.

Plaintiff thereafter timely commenced this civil action. The record of administrative proceedings was filed in this Court on September 14, 2007. Plaintiff filed a statement of errors on October 26, 2007, to which the Commissioner responded on November 19, 2007. No reply brief has been filed, and the action is now ripe for decision.

II.

Plaintiff's testimony at the administrative hearing revealed the following. Plaintiff, who was 61 years old at the time of

the administrative hearing, has a high school education. (Tr. 166). She last worked in a factory where she packed candles in boxes. (Tr. 167). The job required full time standing. At some point, she was no longer able to lift the boxes, which weighed 20 pounds or more, and she also began having chest pain. (Tr. 168). Prior to that job, she worked for 29 years at American Commerce Insurance. Id. She stopped working at American Commerce Insurance because the company was sold and relocated its claims department to Massachusetts. (Tr. 169). Her job involved filing the claims from accidents and sending W-9 forms to claimants.

Plaintiff testified that her claim for disability was based on her heart symptoms. (Tr. 170). She experienced chest pain following mild exertion, and after about an hour of house work or working in her yard, she would feel pressure in her chest. Id. She had changed her diet to help with the chest pain and to address her high cholesterol and high blood pressure. (Tr. 171). She had been unable to complete further testing for her chest pain due to not having insurance to cover the cost. She began experiencing problems with Bell's Palsy in 2000. (Tr. 172). Her left eye does not close and she has learned to close it. Id. Among other things, she is unable to look at a computer screen for long without having her eye dry out. (Tr. 174).

Plaintiff further testified to problems with her right arm. (Tr. 174). She had developed carpal tunnel syndrome in the lower part of her arm but it was progressing to the upper arm. Plaintiff testified that she can lift five to ten pounds at most without being in pain and she raises her arm above her head, pain goes through the upper part of her right arm. (Tr. 175). She was taking over-the-counter medication for the pain and also restricting the use of her arm. (Tr. 176). She had another appointment with a muscle specialist to review the problem. (Tr. 177).

Pertinent medical records reveal the following. Plaintiff was treated by Dr. Hoxie from October 2003 to February 2004. She originally presented for evaluation and management of hypertension, back pain, angina, Bell's palsy and hyperlipemia. Dr. Hoxie believed plaintiff had exertional angina. An EKG showed non-specific changes. He noted that she continued to demonstrate symptoms of Bell's palsy. (Tr. 121). On November 11, 2003, Plaintiff complained of problems with her left eye, high blood pressure, chest pain on exertion and inability to stand for long periods of time. (Tr. 110A-111). The following month, Plaintiff complained of increased blood pressure, chest pain, and the inability to stand for a long period. Dr. Hoxie noted gradual onset of chest pain over the past year on exertion. (Tr. 109-10).

An MRI of the lumbar spine performed January 9, 2004, revealed minimal annular bulge at L5-S1. (Tr. 119-20, 140-41). Plaintiff underwent an MRI of her left knee on February 24, 2004, due to an osteolytic lesion. The results revealed a small but complex tear of the posterior form of the medial meniscus. (Tr. 138). An EMG was performed on May 10, 2004 because of pain in her right arm. That study revealed electrodiagnostic evidence of moderate right medium neuropathy (carpal tunnel) at or distal to the wrist. (Tr. 142-143).

Plaintiff began seeing Dr. Price in May 2005. (Tr. 144). Dr. Price treated her for chronic hypertension, dyslipidemia, Bell's palsy and chest pain. Id. A nuclear cardiac stress study was performed which revealed reversible ischemia in the inferolateral portion of the left ventricle near the base of the heart, normal wall motion, and an ejection fraction of 81%. (Tr. 145). Dr. Price saw her again on July 14, 2005, when he described her stress test as "positive," noted that she could not afford a coronary angiogram, and concluded that she might well have

arteriosclerotic heart disease or coronary artery disease.  He gave her samples of medications.  (Tr. 151).  By November of 2005, she was reporting no more chest pain, but was reporting pain in her right shoulder and upper arm.  Examination revealed a reduced range of motion on abduction.  Dr. Price referred her to Dr. Miller for that problem.  (Tr. 155).  On February 1, 2006, he confirmed in a letter to plaintiff's attorney that plaintiff had angina pectoris based on the reversible ischemia shown on the stress test.  (Tr. 160).

    Plaintiff was seen by Dr. Reece, a psychologist, on January 8, 2004.  At that time, plaintiff attributed her inability to work to her heart problems and her Bell's palsy.  She had never been treated for mental health issues.  However, she stated that she had "bad nerves."  She reported no problems getting along with co-workers for supervisors. She did describe crying spells and feelings of sadness, feelings of hopelessness, guilt, and worthlessness, and low energy.  She also described herself as moody.  Dr. Reece diagnosed an adjustment disorder with depressed mood, chronic, and assigned a Global Assessment of Functioning of 55.  Dr. Reece concluded Plaintiff was mildly impaired in her ability to relate to others and her ability to maintain attention, concentration persistence and pace.  However, she was moderately impaired in her ability to withstand the stress and pressures associated with daily work activities.  (Tr. 115-118).  This report was reviewed by Dr. Pawlarczyk, also a psychologist, who concluded that plaintiff had moderate difficulties in maintaining concentration, persistence or pace and several other moderate limitations, including a moderate limitation in her ability to complete a normal work-day and workweek without interruptions from psychologically based symptoms.(Tr. 122-129).

    Finally, a vocational expert, Dr. Oestreich, testified at the administrative hearing.  He characterized plaintiff's past

office job as semi-skilled and sedentary and the factory work as light and unskilled. (Tr. 184). He was asked to assume that plaintiff had the psychological limitations described by Dr. Pawlarczyk.  With those limitations, plaintiff could perform some unskilled work, but could not perform her past relevant work as a claims clerk because its responsibilities were inconsistent with those limitations. (Tr. 185).  If she also had problems using her right upper extremity for reaching and had problems with repetitive work because of carpal tunnel syndrome, she could not do either of her former jobs.  Id.  If, in addition, she had what the expert described as "dry eye syndrome" due to Bell's palsy, she could probably not do full-time work.  Id.  Finally, if she experienced chest pain with extended walking, climbing stairs, or upon heavy exertion, she could not be employed full-time.  (Tr. 186).

    Based on the above evidence, the Commissioner found that plaintiff suffered from severe impairments including chest pain, carpal tunnel syndrome and hypertension.  No severe psychological impairment was found, nor were her arm problems or Bell's palsy considered severe.  As a result of these impairments, plaintiff was found to have the residual functional capacity to lift 20 pounds occasionally, 10 pounds frequently, and sit, stand, and walk for up to six hours in a an eight-hour workday. Because plaintiff's past relevant work as a claims clerk did not require the performance work-related activities in excess of this residual functional capacity, she was found not to be disabled.

III.

    In her statement of errors, plaintiff raises two issues. First, she argues that the Commissioner erred in finding that her depression was not a severe impairment.  Second, she contends that the Commissioner erred in finding that the she could perform her past relevant work as a claims clerk because her carpal

tunnel syndrome, Bell's palsy, and chest pain would preclude her from doing that job. The Court reviews the Commissioner's decision under the following standard.

<u>Standard of Review</u>. Under the provisions of 42 U.S.C. Section 405(g), "[t]he findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive. . . ." Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion'" <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971) (<u>quoting</u> <u>Consolidated Edison Company v. NLRB</u>, 305 U.S. 197, 229 (1938)). It is "'more than a mere scintilla.'" <u>Id</u>. <u>LeMaster v. Weinberger</u>, 533 F.2d 337, 339 (6th Cir. 1976). The Secretary's findings of fact must be based upon the record as a whole. <u>Harris v. Heckler</u>, 756 F.2d 431, 435 (6th Cir. 1985); <u>Houston v. Secretary</u>, 736 F.2d 365, 366 (6th Cir. 1984); <u>Fraley v. Secretary</u>, 733 F.2d 437, 439-440 (6th Cir. 1984). In determining whether the Secretary's decision is supported by substantial evidence, the Court must "'take into account whatever in the record fairly detracts from its weight.'" <u>Beavers v. Secretary of Health, Education and Welfare</u>, 577 F.2d 383, 387 (6th Cir. 1978) (<u>quoting</u> <u>Universal Camera Corp. v. NLRB</u>, 340 U.S. 474, 488 (1951)); <u>Wages v. Secretary of Health and Human Services</u>, 755 F.2d 495, 497 (6th Cir. 1985). Even if this Court would reach contrary conclusions of fact, the Secretary's decision must be affirmed so long as his determination is supported by substantial evidence. <u>Kinsella v. Schweiker</u>, 708 F.2d 1058, 1059 (6th Cir. 1983).

There are multiple reasons why this case must be remanded. Taking plaintiff's issues in reverse order, the Court agrees, first, that the Commissioner simply failed adequately to assess the limitations caused by two conditions reported by plaintiff concerning her right arm. The Commissioner found the problem

with her upper arm and shoulder not to be severe even though Dr. Price found abnormalities on examination and referred plaintiff to another specialist.  Those findings, coupled with plaintiff's own uncontradicted testimony concerning the pain she experienced when using her right arm, required more than a cursory rejection of this condition as not imposing any significant work-related functions.  Secondly, the record reflects a positive test for carpal tunnel syndrome, and the Commissioner found that condition to be severe.  However, there is no discussion anywhere in the Commissioner's decision of the limitations caused by that condition.  If a condition is severe, by definition it imposes more than a minor limitation on the claimant's ability to perform the requirements of work.  <u>Salmi v. Secretary of</u> <u>H.H.S.</u>, 774 F.2d 685 (6th Cir. 1985).  The internal inconsistency of a decision that finds a condition to be severe, yet omits any discussion of the type or extent of the limitations caused by that condition, is apparent.  It is critical in this case because the vocational expert testified that if plaintiff had limitations on repetitive arm movements due to carpal tunnel syndrome, she could not do the claims clerk job.

The same deficiencies apply to the analysis of plaintiff's Bell's palsy.  The Commissioner refused to characterize this condition as severe because plaintiff's treatment was conservative and because it did not appear to interfere with her regular daily activities.  There is no evidence, however, that any less conservative treatment modalities were available, and the vocational expert clearly testified that, in his experience, anyone with this condition was limited from performing duties expected in the workplace, and perhaps could not perform any full-time work.  Certainly, a condition which limits its sufferers from doing full-time work imposes more than minor limitations on the ability to work and must be considered severe.

Any finding to the contrary lacks substantial support in this record.

Finally, the Court agrees that the analysis of plaintiff's mental impairment was flawed.  Both psychological experts viewed plaintiff as both having a psychological disorder, and they agreed that it imposed moderate (and therefore severe) limitations on her ability to do at least some work-related functions.  The Commissioner discounted these opinions not on the basis of any contrary medical evidence but because plaintiff never reported any work-related stress and because she could maintain attention to daily activities such as sewing, watching television, and working puzzles.  However, the psychological diagnosis was an adjustment disorder and was made at a time well after plaintiff had last worked.  Her ability to work several years prior to the evaluation, at a time when her situation was very different, is not inconsistent with her later development of an adjustment disorder that would impact her ability to go back to work.  Further, there is no basis in this record for concluding that sewing at home or watching television are similar to work-related activities that require constant attention, concentration, persistence or pace.  It might well be true, as the Commissioner found, that plaintiff's psychological condition was "temporary and situational," but there is no substantial support for that conclusion on this record.

Plaintiff has asked that the case be remanded for an award of benefits.  Here, however, the Commissioner failed to assess certain conditions as severe and therefore failed accurately to describe how they limited the plaintiff in the performance of work-related activities.  The Commissioner should be given the opportunity to make that assessment on remand and to decide in the first instance if those limitations permit plaintiff to perform either her past work or other relevant work, or if she

meets the statutory criteria for disability benefits.  A remand will allow the Commissioner to make those necessary determinations.

## IV.

For the foregoing reasons, it is recommended that the plaintiff's statement of errors be sustained and that this case be remanded to the Commissioner pursuant to 42 U.S.C. §405(g), sentence four.

## V.

### PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within ten (10) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s).  A judge of this Court shall make a <u>de novo</u> determination of those portions of the report or specified proposed findings or recommendations to which objection is made.  Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions.  28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation <u>de novo</u>, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation.  <u>See Thomas v.</u>

Arn, 474 U.S. 140 (1985); United States v. Walters, 638 F.2d 947 (6th Cir. 1981).

                                          /s/ Terence P. Kemp
                                          United States Magistrate Judge